ZWARYZ, Plaintiff-Appellee, v. EGGETT et,
Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25247.   Decided January 6, 1961.

*Messrs. Lustig, Icove & Lustig* and *Mr. L. K. Teatsorth,*
for plaintiff-appellee.
*Messrs. Roemisch, Wright & Zimmerman,* for defendants-
appellants.

(YOUNGER, P. J., GUERNSEY, J., of the Third District, DONAHUE, J., of the Seventh District, sitting by designation in the Eighth District.)

For further history see *Omnibus Index* in bound volume.

GUERNSEY, J. This is an appeal by the defendants on questions of law from a judgment of the Municipal Court of Shaker Heights entered on a jury verdict in favor of the plaintiff.

The action was on a debt in the amount of $2,000.00 allegedly due from defendants to plaintiff, the defendants in their answer claiming failure of plaintiff to present a check given in payment thereof, failure of plaintiff to demand payment, and, by way of set off, that plaintiff has been living upon real estate partly owned by defendant Mary Eggett without paying her reasonable rental therefor, that defendant had paid all the funeral expenses for Anna Zwaryz, the mother of plaintiff and said defendant, without any contribution thereto by plaintiff, that although defendant Mary Eggett was one of the three sole heirs to her mother's estate, plaintiff had applied all of the assets of said estate to his personal use, that defendant Mary Eggett had rendered personal services to plaintiff during his illness with the express understanding that the value of said services would be applied on the debt, and further, that on August 1, 1952, defendants had paid $500.00 to plaintiff to be applied toward said loan, and that $1500.00 of the amount loaned came from funds belonging to the mother's estate and not funds belonging to plaintiff.

Although it appears from the pleadings that Anna Zwaryz died intestate, it does not appear from either the pleadings or the evidence that the personal property of which she died seized was ever administered.

Before argument the defendants requested the Court to give two instructions to the jury, each of which the Court refused. They were:

1. "You are instructed as a matter of law that if you find from the evidence in this case that the savings account from

which Harry Zwaryz withdrew $1500 was solely in the name of Anna Zwaryz and as such the sole property of Anna Zwaryz, then you must find that the $1500 was the property of the estate of Anna Zwaryz when it was withdrawn and as such was subject to equal division between Harry Zwarys, his brother Paul Zwaryz and the sister Mary Eggett.''

2. ''You are instructed as a matter of law that if you find from the evidence in this case that the savings account from which the sum of $1500 was withdrawn was the sole property of Anna Zwaryz at the time of her decease then you must find that the $1500 at the time it was withdrawn from the bank was the sole property of the estate of Anna Zwaryz and as such was subject to equal division between Harry Zwaryz, Paul Zwaryz and Mary Zwaryz.''

Following final arguments the Court gave its general charge to the jury which in its entirety was as follows:

''Members of the jury, after I have finished with my talk with you, you will go to the jury room, and it is suggested that you elect someone to be the Chairman of your gathering, sometimes called the foreman or forelady, so that you can conduct your deliberations in a proper and orderly manner.

''You will have with you the pleadings and the Exhibits and there are a few facts you should know about the legal aspects of this.

''This is a case whereby the plaintiff as in all cases must convince you, by what the law calls a preponderance of the evidence. The word 'preponderance' simply means the greater weight of the evidence, and if there is an even distribution the plaintiff has not established his case by the degree of proof required under the law.

''The plaintiff must make his case out by what is called the greater weight of the evidence in order for him to maintain his action.

''This is an action of Harry Zwaryz against William Eggett and Mary Eggett.

''There are two possible verdicts, you have two possible verdicts which you can bring in. One for the plaintiff and if you find for the plaintiff then you may assess his damages at which you figure and find he has coming.

"The plaintiff in his petition asks for the amount of $2,000 plus interest and plus costs. You cannot give him more than that.

"If you find that the plaintiff has failed to prove his claim by a preponderance of the evidence against both William and Mary Eggett, naturally then you have a verdict here which you may return in favor of the defendants.

"It is up to you to take the evidence as you have heard it given to you from the witness stand, giving that testimony that weight which you think it should have as it relates to the facts involved in this case.

"It takes five of your number of six to reach a verdict, at least five, and those of you who concur in the verdict will sign the verdict.

"The bailiff will take you to the jury room and Mr. Reporter, you will give all the Exhibits to the bailiff."

Counsel for defendants took only a general exception to this charge and did not request any further instructions.

The appellants assign error in the following particulars:

"1. That the Court erred in neglecting its mandatory duty to charge the Jury on the law applicable to the issues made by the pleadings and testimony.

"2. That the Court erred in refusing to grant Defendants' two requests to charge before argument.

"3. That the Court erred in refusing to strike non-responsive answers of Plaintiff to questions propounded by Defendants on cross-examination; found at pages 68, 69 and 70 of the Bill of Exceptions which testimony was highly prejudicial to Defendant as it alleged debts of Defendants to Anna Zwaryz of twenty years ago."

The appellants have relied strongly on the cases of *Baltimore & Ohio Railroad Company* v. *Lockwood*, 72 Ohio St., 586, and *Simko* v. *Miller*, 133 Ohio St., 345, in support of their first assignment of error. The first paragraph of the syllabus of the former case reads as follows:

"1. In submitting a case to the jury, it is the duty of the court to separate and definitely state to the jury, the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require; and it

is also the duty of the court to distinguish between, and call the attention of the jury to, the material allegations of fact which are admitted and those which are denied. It is error to read the pleadings to the jury and then say to the jury, and not otherwise to define the specific issues, that these constitute the pleadings in the case, which make up the issue and from which they will try to determine the controversy between the parties.''

The fifth paragraph of the syllabus of the *Simko case* reads:

"5. In submitting a case to the jury, it is the duty of the court to separately and definitely state to the jury the issues of fact made by the pleadings, accompanied by such instructions as to each issue as the nature of the case may require. (*Baltimore & Ohio Rd. Co.* v. *Lockwood,* 72 Ohio St., 586, approved and followed.)

Tested by these statements of law there can be no doubt that the trial court herein failed miserably in fulfilling its duties to charge upon the issues made by the pleadings and the law pertaining thereto and that its failure to so charge constituted error.

However, we have been unable to find any case decided by the Supreme Court of Ohio purporting to apply these rules of law and reversing the judgment of the trial court except where separate and independent grounds for reversal also existed. Indeed, this point is fully developed by Judge Taft at pages 110 and 111 of his opinion in the case of *Rhoades* v. *Cleveland,* 157 Ohio St., 107, with respect to the *Baltimore & Ohio case* and all other cases decided by the Supreme Court of similar import. And, as also stated by Judge Taft commencing at page 111:

"Although the court does have such a duty, *it does not follow that the omission to perform that duty would be reversible error in the event that counsel had not called such omission to the court's attention.* \* \* \* The syllabus in *Simko* v. *Miller, supra,* does not state that it would be and the opinion discloses that the judgment of reversal by this court was based not merely upon failure to comply with the 'rule set forth in *Baltimore & Ohio Rd. Co.* v. *Lockwood*' but also upon 'erro-

neous statements of law contained in the general charge' (page 258). * * *." (Emphasis added.)
* * *

"A decision, that such an error of omission * * * would justify a reversal where the omission had not been called to the attention of the trial court, would certainly be contrary to the second paragraph of the syllabus of and the decision in *Columbus Ry. Co.* v. *Ritter, supra.* * * *.

"Furthermore, such a decision would necessarily amount to a holding that, if the error of omission was very serious and consequently quite apparent to counsel, then, in order to complain about it later, counsel would not have to give the court an opportunity to avoid that error when it could be avoided; but, if it was not very serious and consequently not so apparent to counsel, then, in order to complain about it later, counsel would have to give the court such an opportunity. The more serious and apparent such an error is, the easier it should be for counsel to recognize it and call the court's attention to it. If, before the verdict, counsel is not sufficiently concerned about the potential danger to his cause from a serious error of omission to request the trial court to avoid that error when it can be avoided, it is difficult to understand why a reviewing court should later be concerned when, because of counsel's neglect, it no longer can be avoided."

Four of the other members of the Supreme Court concurred with Judge Taft in his opinion and the court unanimously concurred in the syllabus of the case:

"Where claimed errors in the charge of the court are errors of omission and not errors of commission, unless counsel has requested the court to supply the omissions, such errors of omission will not ordinarily justify a reversal. (Section 11560, General Code [Section 2321.03, Revised Code], applied.)"

The opinion in the *Rhoades case* does not set forth the charge of the trial court, nor does it set forth the foundation for the conclusion of the appellate court that the trial court committed reversible "error of law in failing to separate and define the issues of fact and for failing to charge the law upon such issues * * * no other error appearing in the record." (See, however, *Rhoades* v. *Cleveland*, 60. Ohio Law Abs., 159.) The Supreme Court, not finding any error of commission, re-

versed the judgment of the Court of Appeals and affirmed the judgment of the trial court. Although the syllabus in the *Rhoades case* seems to be qualified by the statement that "such errors of omission will not *ordinarily* justify a reversal" (emphasis added), the opinion does not specify when an error of omission in the charge may justify a reversal. As stated in Sec. 983, Appellate Review, 4 Ohio Jurisprudence 2d, 244:

"The rule under which omissions of this kind which are not specially called to the attention of the trial court are regarded as harmless error has been applied in civil cases to failure to charge upon a wide variety of subjects, including contributory negligence, concurrent negligence, imputed negligence, the doctrine of res ipsa loquitur, the duty of a discharged employee to minimize the damages by seeking other employment, the essential elements of a contract, and, in some instances at least, the measure of damages, and many others, in cases where such instructions would have been proper or desirable."

It is difficult to perceive any reason why the failure to charge on two or more issues in a case should be any more fatal than the failure to charge on one. As hereinbefore stated the failure to charge on the issues of fact and the law pertaining thereto is error without question, but error of omission only, which cannot be considered as reversible error on appeal unless a proper foundation for such consideration exists. In our opinion the word "ordinarily" in the syllabus in the *Rhoades* case is used not to draw a line between the errors of omission in a charge which would not be sufficient to constitute reversible error and those errors of omission which would be sufficient, but is used instead as bearing on the foundation which must be laid before an appellate court may consider the same as reversible error, i. e., ordinarily, unless counsel has requested the trial court to supply the omission, the appellate court may not consider the error. This conclusion is entirely consistent with the general procedural rule stated on page 108 of the opinion in the *Rhoades case*:

"As a general rule, in the absence of statutory provisions to the contrary, a party, represented by counsel, may not *ordinarily* avail himself of an error, which was not called to the attention of the trial judge and which could and might

have been corrected by the trial judge if it had been called to his attention." (Emphasis added.)

We are therefore of the opinion that the decision in the *Rhoades case* is wholly and specifically applicable to the case before us. Although the general charge to the jury was woefully and seriously incomplete, insofar as it went it was correct, the error was of omission and not of commission, and the appellants, not having requested the trial court to supply the omissions, have not laid a foundation upon which this court may determine that the error of omission constitutes reversible error. Appellants' first assignment of error is therefore without merit.

With respect to appellants' second assignment of error relative to the requests to charge before argument, suffice it to say that the first request assumes that the name in which a savings account appears is conclusive as to ownership, and the second charge, in view of the fact that it does not appear that the personal property of Anna Swaryz was ever administered, requires an inference which ignores the effect which costs of administration and claims of creditors, if any, might have upon the asset in question. The court properly refused these requests to charge.

The third assignment of error is based specifically on the court's refusal to strike the following answer to the question posed by defendants' counsel:

"Q. Mr. Zwaryz, knowing that your sister had paid some funds towards the funeral out of her own money, was it ever your intention to participate in. the payment or reimburse your sister for any of the money which she paid?

"A. She owed mother $500."

It is apparent that the answer was not responsive to the question. However, by their answer to plaintiff's petition defendants placed in issue defendant Mary Eggett's claim to an "undivided one-third interest in said real estate and all other property owned by said Anna Swaryz" and her claim that she had "paid all funeral expenses for said Anna Zwaryz out of her own personal funds." The alleged fact that "she owed mother $500" was relevant to both of these claims, and although the defendants claim that this debt, if any, was some twenty

years old, this pertained to the time of trial. Plaintiff's testimony was that the debt was incurred in 1940, which would have been a mere seven years before the death of the mother. We do not think that the error of refusing to strike the non-responsive answer was prejudicial to the defendants under these circumstances.

Finding no prejudicial reversible error in the particulars assigned and argued it is the judgment of this Court that the judgment of the trial court be affirmed at the costs of the appellants.

YOUNGER, P. J., and DONAHUE, J., concur.